## SALLER v. COMMISSIONER OF INTERNAL REVENUE.

### SAME v. UNITED STATES.
#### Nos. 7390, 7451.

Circuit Court of Appeals, Third Circuit.
Aug. 28, 1941.

Bernard Eskin, of Philadelphia, Pa. (George J. Schorr and Wolf, Block, Schorr & Solis-Cohen, all of Philadelphia, Pa., on the brief), for Lee A. Saller.

F. E. Youngman, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch, Sp. Asst. to the Atty. Gen., on the brief), for the Commissioner of Revenue and another.

Before BIGGS, MARIS, and CLARK, Circuit Judges.

MARIS, Circuit Judge.

These two appeals which were heard together involve a single claim by the petitioner and appellant, Lee A. Saller, for the refund of taxes amounting to $873.10 paid under the Agricultural Adjustment Act of May 12, 1933, c. 25, 48 Stat. 31, 7 U.S.C.A. § 601 et seq. The first appeal is from an order of the Processing Tax Board of Review dismissing Saller's petition to review the rejection by the Commissioner

of Internal Revenue of a claim filed by him for refund of the tax. The other appeal is from a judgment of the District Court for the Eastern District of Pennsylvania, 33 F.Supp. 748, dismissing Saller's action brought for the refund of the same tax.

The facts are these. On August 2, 1935, Saller entered into an agreement with Harford Pure Rye Distillers, Inc., by which he agreed to buy and Harford agreed to sell all of the latter's output of rye whisky at a fixed price. The agreement did not by its terms permit the addition to the price of any taxes nor did it by any express provision prohibit such addition. After September 1, 1935 when the processing tax on rye under the Agricultural Adjustment Act went into effect Harford added to the bills for whisky delivered to Saller after that date the amount of processing taxes involved in the processing of the rye contained in the whisky, and Saller paid to Harford the amount of such taxes totalling $5,238.10. Of this amount Saller has already received from the United States the sum of $4,365 as a refund of the tax paid with respect to floor stocks on hand on January 6, 1936, under Section 602 of the Revenue Act of 1936, 7 U.S.C.A. § 642, 26 U.S.C.A.Int.Rev. Acts, page 951. The taxes thus paid by Saller were turned over by Harford to the Collector of Internal Revenue at Baltimore, Maryland. Saller sold the whisky in question to various purchasers at prices which did not include the taxes and he alleged in his pleadings that he bore the burden of the taxes himself.

On January 6, 1936, the Supreme Court in United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914, declared unconstitutional the taxing provisions of the Agricultural Adjustment Act and thereafter Congress enacted the Revenue Act of 1936, Title VII, 26 U.S.C.A.Int. Rev. Acts, page 960 et seq., of which, 7 U.S.C.A. § 644 et seq., laid down the conditions upon which and the procedure under which the refund of taxes paid under these unconstitutional provisions would be made. One of the principal conditions was that the claimant must establish that he bore the burden of the taxes and did not pass them on to his customers. Section 902, 7 U.S.C.A. § 644. Also the claimant was required prior to July 1, 1937, to file a claim for refund on a form prescribed by the Commissioner. Section 903, 7 U.S.C.A.

§ 645. In the case of processing taxes sought to be refunded the claimant, if his claim for refund was disallowed, was entitled to petition the Processing Tax Board of Review, which the act established, to review the Commissioner's action. From the decision of the Board an appeal might be taken to a Circuit Court of Appeals. Section 906, 7 U.S.C.A. § 648.

Pursuant to these statutory provisions Saller, upon the theory that the tax which he had paid to Harford was a processing tax, filed with the Commissioner on June 24, 1937, a claim for refund on P.T. Form 79. This was the form which the Commissioner had prescribed for such claims. The claim was disallowed by the Commissioner upon the ground, inter alia, that the tax was not a processing tax. Thereafter Saller filed a petition for review with the Processing Tax Board of Review. This petition the Board dismissed for want of jurisdiction whereupon Saller filed the first appeal now before us. After the Commissioner's rejection of his first claim for refund Saller filed another upon the theory that the tax he paid was not a processing tax. This also was disallowed whereupon Saller brought the suit in the district court from the dismissal of which the second appeal now before us was taken. The two appeals present the question whether Saller was a taxpayer entitled under the act to claim the refund of the amount here involved. If this question is answered affirmatively the further question arises whether the tax in question was a processing tax within the jurisdiction of the Processing Tax Board of Appeals or a tax of a different character which might be recovered by suit in the district court.

Section 902 of the Revenue Act of 1936, 7 U.S.C.A. § 644, under which Saller's first claim was filed, relates only to the refund "of any amount paid by or collected from any claimant as tax under the Agricultural Adjustment Act [this chapter]." The Processing Tax Board of Review appears to have taken the view that the amount for the refund of which Saller's claim was filed did not represent a tax paid by him in the capacity of a taxpayer and that consequently he was not entitled to its refund under Section 902. In so holding, we think the Board failed to give appropriate effect to the provisions of Section 18 of the Agricultural Adjustment Act, 7 U.S.C.A. § 618. That section provides that if any processor, jobber, or

wholesaler has, prior to the date a tax with respect to any commodity is first imposed under the act, made a bona fide contract of sale for delivery on or after such date, of any article processed wholly or in chief value from such commodity, and if such contract does not permit the addition to the amount to be paid thereunder of the whole of such tax, then (unless the con·· tract prohibits such addition) the vendee shall pay so much of the tax as is not permitted to be added to the contract price. The section further provides that taxes payable by the vendee shall be paid to the vendor at the time the sale is consummated and shall be collected and paid to the United States by the vendor in the same manner as other taxes under the act.

In the case before us the agreement of sale for the rye, upon which the processing taxes in question were levied was entered into prior to the date upon which that tax was first imposed. The agreement did not by its terms permit the addition to the purchase price of any taxes. Consequently the vendor had no contractual right to collect the taxes from the vendee and his sole right to do so arose from the provision of Section 18 that "the vendee shall pay so much of the tax as is not permitted to be added to the contract price." We see no escape from the conclusion that the payments of processing taxes made by Saller to his vendor were made solely under the compulsion of Section 18 of the Agricultural Adjustment Act and were, as that section expressly states, taxes payable by the vendee as taxpayer. We are confirmed in this view by the legislative history of the Agricultural Adjustment Act. See the hearings on H. R. 3855, 73d Cong., 1st Sess., before the Senate Committee on Agriculture and Forestry, pp. 66, 67 and 68, and the statement of the chairman of the Committee to the Senate, Vol. 77, Cong.Rec. p. 1389.

It is argued that the taxes were not paid to the government by Saller but rather by Harford, the vendor. It is true that they were payable through the vendor but in thus receiving and transmitting them the latter acted merely as collecting agent for the government. This did not change the character of the taxes as taxes imposed upon and paid by Saller. An analogy is furnished by the withholding of income tax at the source which has long been a feature of our revenue laws. Under these laws the withholding agent is not necessarily a taxpayer (Union Pac. Ry. Co. v. Bowers, 2 Cir., 33 F.2d 102), even though it actually pays over the amount of the tax to the government collector. On the other hand the recipient of the income from which the tax has been withheld is considered to be the taxpayer, being permitted to credit the withheld tax upon the income tax which he would otherwise have to pay. Int.Rev.Code § 32, 26 U.S.C.A.Int. Rev.Code, § 32.

The Commissioner relies upon Zinsmaster Baking Co. v. Commissioner, 8 Cir., 109 F.2d 738. Insofar as that case is authority for a view different from that which we have expressed it is based upon the proposition that Section 902 restricts refunds to persons who had paid the taxes directly to the government. We find no warrant for so restricting the terms of the statute. Albert Miller & Co. v. Commissioner, 7 Cir., 120 F.2d 789, does not persuade us to the contrary. Alexander Smith & Sons Carpet Co. v. Commissioner, 2 Cir., 117 F.2d 974, cited by the Commissioner and relied on in the case just mentioned, is distinguishable on its facts, as appears from the next to last paragraph of the opinion.

Saller's first claim for refund was filed in time and we think it was sufficient in form. Since he was not a processor full compliance with the requirements of the Treasury regulations as to the contents of such claims by processors was not necessary or in fact possible. We are satisfied that the taxes here sought to be recovered were processing taxes. It follows that Saller's appropriate remedy was by petition to the Processing Tax Board of Review and not by suit against the United States in the district court.

The decision of the Processing Tax Board of Review in No. 7390 is reversed and the cause is remanded for hearing on the merits. The judgment of the district court in No. 7451 is affirmed.